SARAH KANTER, SBN 304542
skanter@beesontayer.com
STEPHANIE PLATENKAMP, SBN 298913
splatenkamp@beesontayer.com
GEOFFREY PILLER, SBN 127001
gpiller@beesontayer.com
**BEESON, TAYER & BODINE, APC**
483 Ninth Street, 2nd Floor
Oakland, CA  94607-4051
Telephone:     (510) 625-9700
Facsimile:     (510) 625-8275

Attorneys for Plaintiffs
Trustees of the Teamsters Benefit Trust

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| TRUSTEES OF THE TEAMSTERS BENEFIT TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>LEONARD TRANSPORT, LLC, PACIFIC COAST TRANSPORT, LLC, KATHIE FAUPEL, individually, KATHIE FAUPEL, dba LEONARD TRANSPORT, LLC, KATHIE FAUPEL, dba PACIFIC COAST TRANSPORT, LLC, MICHAEL LEONARD, individually, MICHAEL LEONARD, dba LEONARD TRANSPORT, LLC, and MICHAEL LEONARD, dba PACIFIC COAST TRANSPORT, LLC,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiffs TRUSTEES OF THE TEAMSTERS BENEFIT TRUST, hereafter "Plaintiffs," allege as follows:

## **INTRODUCTION**

1.  Plaintiffs comprise the Board of Trustees of the Teamsters Benefit Trust ("Trustees" and "Trust," respectively).  The Trust and the plans of benefits it provides are "Taft-Hartley"

1

**COMPLAINT**
Case No.

699714_2
(1330-0222)

multiemployer health and welfare employee benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

2. The Trustees bring this action under the laws of the United States and the state of California against former participating employers of the Trust, Defendants LEONARD TRANSPORT, LLC ("LT"), PACIFIC COAST TRANSPORT, LLC ("PCT"), KATHIE FAUPEL, INDIVIDUALLY, and KATHIE FAUPEL dba LEONARD TRANSPORT, LLC and KATHIE FAUPEL dba PACIFIC COAST TRANSPORT, LLC ("FAUPEL") and MICHAEL LEONARD, INDIVIDUALLY, and MICHAEL LEONARD dba LEONARD TRANSPORT, LLC and MICHAEL LEONARD dba PACIFIC COAST TRANSPORT, LLC.  As a result of Defendants' unlawful and improper enrollment of ineligible individuals, the Trust has been damaged and depleted.  The Trustees therefore sue to enforce the terms of the plan, recover Defendants' ill-gotten gains, and remedy Defendants' fraud.

3. Specifically, the Trustees bring suit in law and equity against Defendants, and all of them, for the enrollment of ineligible individuals in violation of the terms of the Trust Agreement, the plan, and agreements providing for Defendant MICHAEL LEONARD and Defendant LEONARD TRANSPORT, LLC in the Trust.

## VENUE / JURISDICTION

4. This Court has federal question jurisdiction under Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), and supplemental jurisdiction over four state law causes of action. Specifically this matter arises under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), as an action by the fiduciaries of an employee benefit plan for appropriate equitable relief.

5. Venue in this District is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), since the Trust is administered and all Defendants reside within this Judicial District. This matter is therefore properly assigned to the Oakland Division of the Northern District of California.

## THE PARTIES

### *Plaintiffs*

6. Plaintiffs are duly appointed Trustees, together comprising the Board of Trustees of

the Teamsters Benefit Trust, an employee benefit health and welfare plan under the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3).  Plaintiffs are the Trustees of the Trust, and collectively are the "plan sponsor" within the meaning of Section 3(16)(B)(iii) of ERISA, 29 U.S.C. § 1002(16)(B)(iii).

7. The Trustees are fiduciaries, as defined by 29 United States Code § 1002(21)(A), of the Trust and the plan of benefits administered thereunder.

8. The Board of Trustees is also the administrator of the plan, as defined under Section 3(16)(B)(iii) of ERISA, 29 U.S.C. §§ 1002(16)(A) and 1132(d).

9. The Trust is a joint labor-management benefit trust fund established in accordance with the requirements of the Taft-Hartley Act, specifically, 29 U.S.C. § 186(c).  The Trust is funded by contributions made by participating employers who are parties to collective bargaining agreements with participating labor unions, when such agreements require contributions to the Trust in amounts necessary to extend participation to "covered employees."

10. In accordance with 29 U.S.C. § 186(c), the Trustees are appointed in equal numbers by participating labor organizations and participating employers.  Also in accordance with that law, the Trust is governed by an Agreement and Declaration of Trust ("Trust Agreement").  A true and correct copy of the Trust Agreement is attached to this Complaint as **Exhibit A** and is incorporated by reference.

11. The Plan is administered in California, in this judicial district.

*Defendants*

12. On information and belief, Defendant LEONARD TRANSPORT, LLC, is a California Limited Liability Company with its principal place of business at 1378 Pine Avenue, San Jose, California.

13. On information and belief, Defendant PACIFIC COAST TRANSPORT, LLC, is a California Limited Liability Corporation with its principal place of business at 1378 Pine Avenue, San Jose, California.

14. Defendant MICHAEL LEONARD, individually, and MICHAEL LEONARD, dba LT and MICHAEL LEONARD, dba PCT, is a shareholder in LT and PCT.  Upon information and belief,

1  LEONARD resides at 1378 Pine Avenue, San Jose, California.

2      15.    Defendant KATHIE FAUPEL, individually, and KATHIE FAUPEL, dba LT and
3  KATHIE FAUPEL, dba PCT, is a shareholder in LT and PCT.  Upon information and belief,
4  FAUPEL resides at 1378 Pine Avenue, San Jose, California.

## GENERAL ALLEGATIONS

### *Interrelationship of Defendants*

    16.    On information and belief, on August 6, 2009, FAUPEL and LEONARD created LT as a California Limited Liability Company by executing the LEONARD TRANSPORT LLC Operating Agreement ("LT Operating Agreement").  The LT Operating Agreement specified that, "Ownership in the Company shall be reflected as percentage membership interests in the Company." The LT Operating Agreement also specified that FAUPEL and LEONARD were Members of the Company, with FAUPEL having a ninety-nine percent membership interest, and LEONARD having a one percent membership interest.  FAUPEL contributed $190,000 in capital and LEONARD contributed $36,000.

    17.    On information and belief, on December 31, 2011, FAUPEL and LEONARD executed an Addendum to the LT Operating Agreement.  Pursuant to this addendum, LEONARD sold 100% of his membership interest in LEONARD TRANSPORT for $33,600, would no longer receive monthly guarantee payments, and "in the future would be paid as an employee."  On information and belief, LEONARD remained a Member of LT.

    18.    On information and belief, FAUPEL and LEONARD formed PCT on January 17, 2013, to replace LEONARD TRANSPORT by executing the PACIFIC COAST TRANSPORT, LLC Operating Agreement ("PCT Operating Agreement").  According to the PCT Operating Agreement, LEONARD and FAUPEL were both listed as Members, with FAUPEL having 100% Membership Interest, and LEONARD with 0% interest.

    19.    On information and belief, PCT was formed by FAUPEL and LEONARD to replace LT after a lawsuit was brought by LEONARD TRANSPORT against the buyer of one of its trucks.

    20.    Plaintiffs allege that PCT operated as the alter ego of LT, as the companies had the same ownership, management, business purpose, operation, customers, and place of business.

4

COMPLAINT
Case No.

699714_2
(1330-0222)

Plaintiffs allege that the obligations of LT as set forth in this Complaint are also the obligations of PCT.[1]

21. Plaintiffs allege, upon information and belief, that LEONARD and FAUPEL are and at all times relevant were the only officers, directors and/or shareholders of LT and PCT, who engaged in various practices wholly inconsistent with the corporate form, which include the commingling of funds and other assets; the failure to segregate funds of LEONARD, FAUPEL and the corporations; the treatment of corporate assets by LEONARD and FAUPEL as their own where, for example, an LT corporate check was used to pay for a personal debt of LEONARD; the failure to maintain adequate corporate minutes or records as no required employment records were maintained for LEONARD; the ownership of all the stock by two single individuals; the domination or control of the corporation by the stockholder; the use of a single address for the individual and the corporation; the inadequacy of the corporation's capitalization; the disregard of formalities and the failure to maintain arm's-length transactions with the corporation; and the attempts to segregate liabilities to the corporation. The aforementioned actions comprise a unity of interest and ownership such that the individuality, or separateness, of FAUPEL and LEONARD, and LT/PCT has ceased and, in addition, the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.

*Leonard's Participation in the Trust*

22. On or about June 30, 2011, LT/PCT entered into a collective bargaining agreement ("LT CBA") with Teamsters Local 287 effective June 1, 2011, through May 31, 2012. LEONARD was the sole individual covered by the LT CBA. The LT CBA set forth the terms and conditions of LEONARD's employment including among other things wage rates, hours of work, overtime payments, and grievance procedures. The CBA further provided that LT would provide health and welfare benefits to each covered employee who worked eighty (80) hours in the previous month by paying a monthly contribution to the Trust of $1,448, which in turn provides benefits to the Employee through medical Plan I-A, dental plan and vision plan. A true and correct copy of the LT CBA is attached to this Complaint as **Exhibit B** and is incorporated by reference.

---

[1] As Plaintiffs allege that LT and PCT are legally indistinguishable entities and the Trustees allege identical wrongdoing committed by both entities as such, they are hereinafter referred to jointly as "LT/PCT."

23. The CBA also provided that the employer would contribute a monthly amount of $277.27 for each covered employee who worked 80 hours in the previous month to the Trust's Retirement Security Plan ("RSP"). The RSP provides retiree medical coverage upon retirement for individuals who have worked the requisite number of months for an employer obligated to make RSP contributions on the individual's behalf, and have met other required eligibility criteria.

24. As a condition of participating in the Trust, employers must agree to be bound by the terms of the Trust Agreement, the Trustee's policies adopted thereunder, and the plan of benefits offered by the Trust.

25. Participating employers are therefore required to execute a "Subscriber's Agreement" which sets forth terms and conditions of participation in the Trust, including the acceptance of the Trust Agreement, the policies and resolutions of the Trustees, and the Trustees' authority to exercise discretion with respect to the application of the Trust Agreement and the Trust's plans of benefits.

26. The Trust permits the participation of "working owners," however, the employer must be incorporated, and the owner must be employed under the terms of a collective bargaining agreement providing for participation in the Trust.

27. On June 30, 2011, FAUPEL on behalf of LT/PCT executed a Subscriber's Agreement providing for LT/PCT's participation in the Trust, thereby agreeing to the terms of the conditions of participation in the Trust as set forth in the Trust Agreement. A true and correct copy of the Subscriber's Agreement is attached to this Complaint as **Exhibit C** and is incorporated by reference.

28. Article I, Section 1.7 of the Trust Agreement defines an "Employee," as,

> A person employed under the terms of a Collective Bargaining Agreement between a Union and an Employer or a person who is covered by an Adoption Agreement, and the dependents of such person as defined in the applicable Plan. The term "Employee" shall include retired employees who satisfy the eligibility rules of any plan covering retirees established hereunder. The term "Employee" shall not include a sole proprietor or partner of a partnership; provided, however, that this sentence shall not exclude a shareholder of a corporation that is an Employer and is duly organized and operated under the laws of a State of the United States of America who is employed by that corporation to render services pursuant to a Collective Bargaining Agreement or Adoption Agreement.

6

COMPLAINT
Case No.

699714_2
(1330-0222)

29. Article I, Section 1.5, defines "Covered Employee," in pertinent part, as, "[a]n Employee who has worked the hours required to establish eligibility for benefits under a Collective Bargaining Agreement or Adoption Agreement."

30. On information and belief, for all relevant times hereto LEONARD was not employed under the terms of the LT CBA, and did not render services to LT/PCT pursuant to the LT CBA. He was therefore ineligible for coverage with the Trust under the Trust Agreement.

31. On information and belief, until November 2013 LT/PCT did not maintain records of the hours worked by LEONARD, despite the requirement in the CBA that LEONARD be paid for hours worked at a set hourly rate, and that eligibility for coverage to the Trust was based on working eighty (80) hours per month in the prior month.

32. On information and belief, for all relevant times hereto LEONARD's compensation was not attributable to and bore no relationship to hours worked by LEONARD, as was required by the LT CBA.

33. On information and belief, LEONARD did no work for LT/PCT between November 2011 and March 2012 due to ill health. Nevertheless, LT/PCT continued making contributions to the Trust on LEONARD's behalf, and LEONARD remained enrolled in coverage provided by the Trust.

34. On information and belief, for all relevant times hereto LT/PCT did not pay LEONARD as an employee, or comply with federal or state law governing the employment relationship.

*Leonard's Fraudulent Enrollment of Former Spouse Judith Leonard*

35. To commence coverage in the Plan newly eligible participants are required to submit an Enrollment Form to the Trust providing certain information, selecting between various medical and dental options, and listing eligible covered dependents who will also be enrolled in coverage.

36. Under Plan I-A's Guide to Your Benefits ("Guide"), which is the Plan's Summary Plan Description and ERISA Plan Document, dependents eligible for coverage include, among others, the participant's "legal spouse." "Spouse" is defined by the Guide as, "the person married to a covered employee under a legally recognized existing marriage in the state where you live."

COMPLAINT
Case No.

37. On or about August 29, 2011, LEONARD submitted an Enrollment Form to the Trust. On the Enrollment Form he listed Judith Leonard as his "legal spouse."

38. On information and belief, at the time LEONARD submitted the Enrollment Form to the Trust stating Judith Leonard was his legal spouse and thus eligible for coverage, he was not married to Judith Leonard, their marriage having been legally dissolved on or about March 9, 2010.

39. Based on the fraudulent information provided to the Trust by LEONARD on the Enrollment Form, Judith Leonard was enrolled in coverage under the Trust's medical Plan I-A, dental plan and vision plan and caused the Trust to pay medical claims, prescription drug claims, and dental and vision premiums on her behalf.

*Leonard and Judith Leonard's Continued Participation in the Trust*

40. LT/PCT continued to make monthly contributions to the Trust on LEONARD's behalf until May 2012. LT/PCT resumed making monthly contributions on LEONARD's behalf in November 2013.

41. LT/PCT made its last contribution on LEONARD's behalf in March 2014, for April coverage. LEONARD's active coverage under Plan I-A ended on April 30, 2014.

42. The Trust subsequently notified LEONARD of his right under federal law to elect COBRA Continuation Coverage. LEONARD elected to self-pay for COBRA Continuation Coverage for himself and Judith Leonard. LEONARD and Judith Leonard's COBRA coverage began on May 1, 2014.

43. During the period LEONARD was enrolled in, but ineligible for, coverage under the terms of the Trust from July 2011 to June 2012, and December 2013 to June 2015, the Trust paid a total of $675,359.61 including medical claims, prescription drug claims, vision premiums, and dental premiums on his and Judith Leonard's behalf. Net of monthly contributions paid by LT/PCT, this amount is $615,691.29.

*Payroll Compliance Audit of LT/PCT and Subsequent Trust Action*

44. The Trust and its Administrator do not have access to the participating employers' payroll or payroll records. As such, pursuant to the Trust Agreement, participating employers submit

monthly lists of employees along with their monthly contributions. Such reports indicate the employees eligible for coverage under the Trust for the contribution month.

45. The Trustees have adopted an audit compliance policy and procedure as required under Department of Labor guidelines. Such policy entails the regular auditing, including payroll auditing, of participating employers' books and records to ensure they have complied with the terms of the Trust.

46. The Trust engages a firm of certified public accountants to perform compliance audits.

47. During or around the last quarter of 2014, the Trust's auditing firm conducted a compliance audit of LT/PCT. The audit of LT/PCT was the for the period of June 1, 2011, through October 31, 2014. The audit was completed on or around April 22, 2015, and on that date, a final report was submitted to the Trust and provided to LT/PCT.

48. The audit revealed that LEONARD was not reported as an employee for any purpose other than to obtain coverage with Teamsters Benefit Trust and that LT/PCT had not maintained any payroll documents, filed payroll taxes, or issued paychecks to LEONARD.

49. The audit also revealed that LT/PCT had not maintained daily driver logs until November 2013, so the auditor was unable to verify that LEONARD had worked the 80 hours required for coverage under the CBA each month prior to November 2013.

### Discovery of Fraudulent Enrollment of Judith Leonard

50. During the course of the its review of LEONARD's participation in the Trust, the Trust discovered in 2017 that Michael and Judith Leonard had divorced in 2010 and that LEONARD had fraudulently enrolled Judith Leonard in coverage through the Trust by claiming on the Enrollment Form that she was his legal spouse.

51. On or about April 11, 2017, the Trust wrote to Judith Leonard informing her that her coverage under the Plan was being terminated retroactively because she had been fraudulently enrolled and had never been eligible for coverage.

52. Judith Leonard incurred $49,184.89 in claims during the period LEONARD received coverage with the Trust based on contributions from LT/PCT and subsequent COBRA Continuation coverage (*i.e.*, July 2011 to June 2012 and December 2013 to June 2015).

53.   Judith Leonard incurred an additional $9,098.59 in claims from July 2015 to the date her coverage was terminated based on LEONARD's fraudulent representation that she was his legal spouse. During this period, LEONARD was enrolled in coverage provided by the Trust based on his work for Central Concrete, a contributing employer to the Trust.

*Demand for Payment*

54.   By letter dated March 16, 2017, to FAUPEL and LEONARD as shareholders of LT/PCT, and in their individual capacity, the Trust demanded payment in the amount of $615,691.29, which is the amount of medical and prescription drug claims incurred by LEONARD and Judith Leonard through June 2015, as well as the amount of the dental and vision premiums paid by the Trust for that period, less contributions received.

55.   The letter also demanded payment from LEONARD, individually, in the amount of $9,098.59 for claims incurred by Judith Leonard from July 2015 (when LEONARD received eligibility for coverage through his work at Central Concrete) to the date of the letter.

56.   To date, the Trust has received no response from either FAUPEL or LEONARD in any capacity.

**FIRST CAUSE OF ACTION**
**Equitable Restitution Pursuant to ERISA [29 U.S.C. §1132(a)(3)]**
(Against each and every Defendant)

57.   Plaintiffs incorporate by reference and reallege as though fully set forth herein each and every allegation in paragraphs 1 through 56, above.

58.   The Trustees are fiduciaries and the Trust Agreement, Subscriber's Agreement, and Plan Document set forth the terms of the Plan.

59.   Defendants, and all of them, misrepresented to the Trustees that Defendant LEONARD met the eligibility criteria for coverage under Plan I-A. Defendants knew that Defendant LEONARD did not meet these criteria and they misrepresented these facts for the purpose of obtaining medical benefits for Defendant LEONARD and Judith Leonard, and for having the Plaintiffs pay for those benefits in reliance on these misrepresentations.

60.   Plaintiffs did, in fact, rely on Defendants' misrepresentations and paid claims for benefits in reliance thereon, and Defendants were therefore unjustly enriched in the amount paid by

the Trust for medical benefits for Defendant LEONARD and Judith Leonard based on this reliance by Plaintiffs.

61.     Plaintiffs reasonably relied on the misrepresentations of the Defendants and suffered a financial loss in the amounts they paid in reliance on Defendants' misrepresentations.

62.     Defendants were unjustly enriched by their wrongful and intentional misrepresentation concerning Defendant LEONARD's eligibility, and Plaintiffs are therefore entitled to equitable restitution as an appropriate equitable relief available to it under Section 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3).

63.     Plaintiffs seek equitable restitution, jointly and severally, from Defendants in the amount of $615,691.29.

**SECOND CAUSE OF ACTION**
**Equitable Restitution Pursuant to ERISA [29 U.S.C. §1132(a)(3)]**
(Against Defendant MICHAEL LEONARD)

64.     Plaintiffs incorporate by reference and reallege as though fully set forth herein each and every allegation in paragraphs 1 through 63, above.

65.     The Trustees are fiduciaries and the Trust Agreement, Subscriber's Agreement, and Plan Document set forth the terms of the Plan.

66.     Defendant LEONARD misrepresented to the Trustees that Judith Leonard was his spouse for purposes of obtaining medical benefits.  Defendant LEONARD knew that Judith Leonard was not his spouse and misrepresented this fact for the purpose of obtaining medical benefits for Judith Leonard, and for having the Plaintiffs pay for those benefits in reliance on this misrepresentation.

67.     Plaintiffs did, in fact, rely on Defendant LEONARD's misrepresentation and paid claims for benefits in reliance thereon, and Defendant LEONARD was therefore unjustly enriched in the amount paid by the Trust for medical benefits for Judith Leonard based on this reliance by Plaintiffs.

68.     Plaintiffs reasonably relied on the misrepresentation of Defendant LEONARD and suffered a financial loss in the amounts they paid in reliance on this misrepresentation.

69. Defendant LEONARD was unjustly enriched by their wrongful and intentional misrepresentation concerning Judith Leonard's eligibility, and Plaintiffs are therefore entitled to equitable restitution as an appropriate equitable relief available to it under Section 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3).

70. Plaintiffs seek equitable restitution from Defendant LEONARD in the amount of $58,283.48.

### THIRD CAUSE OF ACTION
**Fraudulent Deceit [Calif. Civil Code §§ 1709 and 1710(1)]**
(Against each and every Defendant)

71. Plaintiffs incorporate by reference and reallege as though fully set forth herein each and every allegation in paragraphs 1 through 70, above.

72. Defendants, and each of them, willfully and intentionally misrepresented to Plaintiffs that Michael LEONARD met the criteria for eligibility for benefits set forth in the Trust Agreement signed by Defendant KATHIE FAUPEL on behalf of LT/PCT.

73. Defendants intended Plaintiffs to rely on their misrepresentations in this regard, and Plaintiffs did reasonably rely on these misrepresentations by providing benefits to Defendant LEONARD and paying medical providers for services rendered to Defendant LEONARD and Judith Leonard.

74. As a result of Plaintiffs' reliance on Defendants' misrepresentations and its payment of benefits in reliance thereon, Plaintiffs suffered damages in the amount of $615,691.29.

75. Plaintiffs seek damages in this amount, jointly and severally, from all Defendants, with interest at the legal rate.

### FOURTH CAUSE OF ACTION
**Fraudulent Deceit [Calif. Civ. C. §§ 1709 and 1710(1)]**
(Against Defendant MICHAEL LEONARD, Individually)

76. Plaintiffs incorporate by reference and reallege as though fully set forth herein each and every allegation in paragraphs 1 through 75, above.

77. Defendant LEONARD, individually, willfully and intentionally misrepresented that Judith Leonard was his spouse for the purpose of obtaining medical coverage for her as a beneficiary.

78. Defendant LEONARD intended Plaintiffs to rely on this misrepresentation, and Plaintiffs did reasonably rely on these misrepresentations by providing benefits to Judith Leonard and paying medical providers for services rendered to Judith Leonard.

79. As a result of Plaintiffs' reliance on Defendant LEONARD's misrepresentations and its payment of benefits in reliance thereon, Plaintiffs suffered damages in the amount of $58,283.48.

80. Plaintiffs seek damages in this amount from Defendant LEONARD, individually, with interest at the legal rate.

**FIFTH CAUSE OF ACTION**
**Negligent Misrepresentation [Calif. Civ. C. § 1710]**
(Against each and every Defendant)

81. Plaintiffs incorporate by reference and reallege as though fully set forth herein each and every allegation in paragraphs 1 through 80, above.

82. Defendants, and each of them, represented to Plaintiffs that Defendant LEONARD met the criteria for eligibility for benefits set forth in the Trust Agreement signed by Defendant KATHIE FAUPEL on behalf of LT/PCT.

83. However, Defendants made this representation without any reasonable ground for believing it to be true and it was, in fact, not true.

84. Defendants, and all of them, represented to Plaintiffs that Defendant LEONARD met the Trust's eligibility requirements with the intention of inducing Plaintiffs to rely on their representations.

85. Plaintiffs were unaware of the falsity of Defendants' representations and reasonably relied upon them in providing medical benefits to Defendant LEONARD and paying medical providers for services rendered to them.

86. As a result of its reliance on Defendants' false representations, Plaintiffs sustained damages in the amount of $615,691.29.

87. Plaintiffs seek damages in this amount, jointly and severally, from all the Defendants, with interest at the legal rate.

/ / /

/ / /

**SIXTH CAUSE OF ACTION**
**Negligent Misrepresentation [Calif. Civ. C. § 1710]**
(Against Defendant MICHAEL LEONARD, Individually)

88. Plaintiffs incorporate by reference and reallege as though fully set forth herein each and every allegation in paragraphs 1 through 87, above.

89. Defendant LEONARD represented to Plaintiffs that Judith Leonard was his spouse for the purpose of obtaining medical coverage for her as a dependent.

90. However, Defendant LEONARD made this representation without any reasonable ground for believing it to be true and it was, in fact, not true.

91. Defendant MICHAEL LEONARD intended Plaintiffs to rely on this misrepresentation, and Plaintiffs did reasonably rely on these misrepresentations by providing benefits to Judith Leonard and paying medical providers for services rendered to Judith Leonard.

92. Plaintiffs were unaware of the falsity of Defendant LEONARD's representations and reasonably relied upon them in providing medical benefits to Judith Leonard and paying medical providers for services rendered to her.

93. As a result of its reliance on Defendant LEONARD's false representations, Plaintiffs sustained damages in the amount of $58,283.48.

94. Plaintiffs seek damages in this amount from Defendant LEONARD, individually, with interest at the legal rate.

**PRAYER FOR RELIEF**

WHEREFORE, as to the FIRST, THIRD and FIFTH CAUSES OF ACTION:

Plaintiffs respectfully request a judgment against all the Defendants, jointly and severally, as follows:

1. An order directing the Defendants to pay Plaintiffs:

    a. $615,691.29 in net medical claims, prescription drug claims, vision premiums and dental premiums paid by Plaintiffs on behalf of MICHAEL LEONARD and Judith Leonard;

    b. Interest on the $615,691.29, at the legal rate;

COMPLAINT
Case No.

699714_2
(1330-0222)

    c. Reasonable attorney fees and costs of this action pursuant to the Article V, Section 3.4(d) of the Trust Agreement and 29 U.S.C. 1132(g)(1 & 2); and

    d. Such other relief as the Court deems just and proper.

  2. An order holding Defendants jointly and severally liable for the amounts determined to be owed by Defendants: and

  3. Appropriate equitable relief to remedy the wrongful conduct alleged herein.

WHEREFORE, as to the SECOND, FOURTH and SIXTH CAUSES OF ACTION, Plaintiffs respectfully request a judgment against Defendant MICHAEL LEONARD, individually, as follows:

  1. An order directing Defendant LEONARD to pay Plaintiffs:

    a. $58,283.48 in medical claims, prescription drug claims, and dental and vision premiums paid on behalf of Judith Leonard;

    b. Interest on the $58,283.48, at the legal rate;

    c. Reasonable attorney fees and costs of this action pursuant to the Article V, Section 3.4(d) of the Trust Agreement and 29 U.S.C. § 1132(g)(1 & 2); and

    d. Such other relief as the Court deems just and proper.

  2. Appropriate equitable relief to remedy the wrongful conduct alleged herein.

Dated: November 17, 2017    BEESON, TAYER & BODINE, APC

            By: /s/ SARAH KANTER
            Attorneys for TRUSTEES OF THE
            TEAMSTERS BENEFIT TRUST

**COMPLAINT**
Case No.